UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN LAVELL CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:05CV2042 ERW |
| vs. ) | |
| ) | |
| FIRESTONE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Mediation and Arbitration [doc. #17].

### I.  FACTUAL BACKGROUND

Plaintiff Kevin Carter ("Plaintiff") began working for Defendant, BFS Retail & Commercial Operations, LLC ("Defendant"),[1] in May 2003.  When Plaintiff filled out his job application, he acknowledged that he would be bound by the terms of Defendant's "Employee Dispute Resolution Plan," which Defendant instituted on October 1, 1995 ("EDR Plan" or "1995 EDR Plan") [doc. #18-3].  On May 30, 2003, Defendant gave Plaintiff a copy of the EDR Plan, and Plaintiff signed an "Agreement and Acknowledgment of Bridgestone/Firestone, Inc. Employee Dispute Resolution Plan" [doc. #18-7].  The acknowledgment form stated:

> As a condition of my employment by Bridgestone/Firestone, I agree that
> I will be bound by the terms of the Plan.  I acknowledge that I have received
> a copy of the Plan.

[doc. #18-7].  The front cover of the EDR Plan booklet that Plaintiff signed states that employees

---

[1] Bridgestone/Firestone, Inc. is the former parent company of Defendant.  Plaintiff refers to Defendant as "Firestone" in his pleadings.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

who apply for employment, accept employment, or continue working for the company after receiving the EDR Plan agree to resolve all employment-related legal claims through mediation and arbitration [doc. #18-4].[2] Page one of the EDR Plan states, "[a]pplication for employment, initial employment or continued employment on or after the effective date of [the] Plan constitutes consent and agreement by both the Employee and the Company to be bound by [the] Plan" [doc. #18-4 at 14].

At an orientation class on June 18 and 19, 2003, Plaintiff received a copy of Defendant's "Employment Information for Associates Handbook" (the "Handbook"), which discusses the EDR Plan and states that employees who accept or continue employment with Defendant agree to be bound by the terms of the EDR Plan [doc. #18-6 at 4; doc. #18-12 at ¶¶ 7, 9]. One term of the EDR Plan is a requirement to adhere to the EDR Plan's mediation and arbitration procedures [doc. #18-4 at 15].

In 2003, after Plaintiff received a copy of the Handbook at his orientation, Defendant amended the 1995 EDR Plan (the "Amended Plan")[3] [doc. #18-12 at ¶ 10]. The first page of the Amended Plan states, in bold, capital letters, that continued employment after receipt of the Amended Plan constitutes acceptance of the Plan's terms [doc. #18-8 at 2]. Kevin Kedl, the store manager at Plaintiff's place of employment, distributed copies of the Amended Plan to employees and asked them to sign a form acknowledging that they received the copies [doc. #18-2 at ¶¶ 12-13]. Plaintiff did not sign the form to acknowledge receipt of the Amended Plan, but noted on the acknowledgment form,

---

[2]The EDR plan requires employees and the employer to first submit all employment-related disputes to mediation. The American Arbitration Association (AAA) assigns an external mediator to handle the dispute. If mediation does not resolve the dispute, then the employer or employee may request arbitration within 30 days from the conclusion of the mediation process. The AAA assigns an external arbitrator, who makes a final binding decision after both sides are given the opportunity to present evidence [doc. #18-4 at 6-7].

[3]Defendant states that the 1995 EDR Plan and the 2003 Amended Plan are substantially the same.

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

"Refuse to sign," followed by his signature [doc. #18-11]. Kedl made a notation below Plaintiff's signature, "The manager gave booklet to employee Kevin Carter," and signed and dated the form[4] [doc. #18-3].

Defendant terminated Plaintiff's employment on July 9, 2004 [doc. #18-2 at ¶ 15]. Defendant states that its reasons for terminating Plaintiff were insubordination, excessive absenteeism, and unreliability [doc. #18-2 at ¶ 15]. Plaintiff filed a Complaint with this Court on November 2, 2005, alleging employment discrimination [doc. #3-1]. In his Complaint, Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964 by subjecting him to racial jokes and denying him a transfer to another store [doc. #3-1]. On February 23, 2006, Defendant filed a Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Mediation and Arbitration [doc. #17]. Plaintiff filed a response to Defendant's motion on March 16, 2006 [doc. #19]. Defendant filed a Reply on March 22, 2006 [doc. #20].

## II. DISCUSSION

In its Motion, Defendant requests that the Court dismiss or stay this matter and refer Plaintiff's claim to final and binding arbitration in accordance with the EDR Plan. According to Defendant, Plaintiff agreed to abide by the terms of the EDR Plan, which include arbitration of employment-related disputes. Defendant contends that Plaintiff: (1) signed an acknowledgment form in May 2003, acknowledging his agreement to the arbitration requirement, and (2) continued his employment after receiving a copy of the Amended Plan in November 2003. Defendant argues that the agreement to arbitrate is enforceable and that Plaintiff should be compelled to arbitrate his claim. In opposing the Motion, Plaintiff claims that he did not read the Amended Plan and did not sign the

---

[4]The date on the form indicates that Kedl signed it on November 10, 2003.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

acknowledgment form for the Amended Plan because he did not agree with the terms of the EDR Plan. Plaintiff believes that he is entitled to adjudicate his claim before this Court.

"[A]n agreement to arbitrate is a matter of contract, and 'is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986) (internal quotation omitted); *see also id.* at 649 (any question regarding whether parties have agreed to arbitrate is a question for the court).

In determining whether it should compel arbitration, a court's role is limited to determining "whether the parties have entered into a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement." *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001); *see also Keymer v. Mgmt. Recruiters Intern., Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). When deciding whether parties have agreed to arbitrate a particular matter, courts apply ordinary state law contract principles. *Keymer*, 169 F.3d at 504. The Federal Arbitration Act's pro-arbitration policy "does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." *Id.*

### A. The Parties Entered Into a Valid Agreement to Arbitrate.

The first issue for the Court to determine is whether the parties entered into a valid agreement to arbitrate. Under Missouri law, a contract requires mutuality of agreement, which means that the parties must have "a meeting of the minds on the essential terms of the contract." *Ketcherside v.*

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*McLane*, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). To determine whether there has been a meeting of the minds, courts look to "the intention of the parties as expressed or manifested in their words or acts." *Smith v. Hammons*, 63 S.W.3d 320, 325 (Mo. Ct. App. 2002). In other words, "[w]hether a contract is made and, if so, what the terms of the contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties." *Id.* The basic elements of a contract are offer, acceptance, and consideration. *Citibank (South Dakota), N.A., v. Wilson*, 160 S.W.3d 810, 813 (Mo. Ct. App. 2005). "Acceptance of an offer need not be made by spoken or written word." *Id.* "This is especially true where 'services are rendered under circumstances such that the party benefited thereby knows the terms on which they are being offered. If this party receives the benefit of the services in silence, when there was a reasonable opportunity to reject them, this party is manifesting assent to the terms proposed and thus accepts the offer.'" *Id.* (quoting 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS, § 3.21, p. 415 (Rev. ed. 1993)). Consideration consists of either a detriment to the promisee or a benefit to the promisor. *Id.*

The elements necessary for a valid contract are present in this case. First, the application for employment, the 1995 EDR Plan acknowledgment form, and the Amended Plan all contain Defendant's offer of employment or continued employment in exchange for Plaintiff's agreement to abide by the terms of the EDR Plan. Second, Plaintiff's choice to accept Defendant's offer of employment and his choice to continue his employment constitute his acceptance of Defendant's offer on the terms specified by Defendant.[5] Finally, the parties' agreement to arbitrate was supported by

---

[5]Plaintiff's acceptance of Defendant's offer was manifested in numerous ways. First, when Plaintiff applied for a job with Defendant, he signed an application form that stated that he agreed to be bound by the terms of the EDR Plan. Next, in May 2003, after beginning work with Defendant, Plaintiff signed an acknowledgment form stating that he agreed to be bound by the terms of the 1995 EDR Plan. There is no question that Plaintiff is bound by the 1995 EDR Plan, the terms of which require him to arbitrate his current claim. Finally, Plaintiff's continued employment after receiving the Amended Plan

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

consideration. Under Missouri law, continued employment can constitute consideration to support an agreement. *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238, 241 (Mo. Ct. App. 1976) ("A continuance by employee in the employment of employer where he is under no obligation to remain and the continuance by the employer of the employment where continuance is not required supplies adequate consideration for a secondary contract."). Moreover, Defendant received Plaintiff's services in exchange for compensation, and Plaintiff received this compensation in exchange for his services and his agreement to abide by the terms of the EDR Plan. In addition, the EDR Plan reflects each party's mutual agreement to submit employment-related claims to binding mediation and arbitration. (Exh. 1 of Exh. B, at 2, § 4(A); Exh. 5 of Exh. B, at 4, § 4(A)). This mutuality serves as additional consideration to support the EDR Plan. *McIntosh v. Tenet Health Sys. Hosp., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001).

Because the parties were aware of the terms of the contract, there was a meeting of the minds. Plaintiff's supposition that he did not have to abide by the terms of the EDR Plan because he did not sign an acknowledgment form when it was presented to him was misguided. His awareness of the terms, notwithstanding any disagreement with them, is the relevant factor in determining whether there was a meeting of the minds.

---

constitutes his agreement to be bound by the Amended Plan, the terms of which require him to arbitrate his current claim. The Amended Plan states that continued employment after receipt of the Amended Plan constitutes acceptance of the terms of the Amended Plan. Plaintiff does not dispute that he received a copy of the Amended Plan constitutes acceptance of its terms. Indeed, he stated in his Response to Defendant's Motion that he received a copy of the Plan, but failed to read it. Moreover, he acknowledged that he received a copy of the Amended Plan when he wrote, on the acknowledgment form, that he refused to sign the form. Plaintiff admits in his Response that he did not sign the acknowledgment form because he knew that the Amended Plan would require him to arbitrate his current claim. Plaintiff continued working for Defendant for eight months after receiving a copy of the Amended Plan. His continued employment manifested an intent to abide by the terms of the Amended Plan.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

### B. Plaintiff's Claim Falls within the Scope of the Agreement.

The second issue that the Court must address is whether Plaintiff's claim falls within the scope of the agreement. The EDR Plan states that employees agree to use the EDR process to resolve "employment-related legal claims." Plaintiff does not dispute that his employment discrimination claim is an employment-related claim and does not dispute that it falls within the scope of the EDR Plan. Thus, Plaintiff's claim is covered by the EDR Plan.

## III. CONCLUSION

The parties entered into a valid agreement to abide by the terms of the EDR Plan. Further, Plaintiff's claim falls within the scope of the EDR Plan. Because a valid agreement to arbitrate exists and because Plaintiff's claim falls within the scope of that agreement, Plaintiff must adjudicate his claim in accordance with the EDR Plan. Therefore, Defendant's Motion will be granted, and this action will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Mediation and Arbitration [doc. #17] is **GRANTED**. This action is **DISMISSED** without prejudice.

An appropriate Order of Dismissal shall accompany this order.

Dated this 28th day of April, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com